IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARYKATE GRAY, | CIVIL ACTION |
| Plaintiff, | |
| | |
| v. | |
| | |
| GREAT VALLEY SCHOOL DISTRICT, | NO.  14-5659 |
| GREAT VALLEY HIGH SCHOOL, | |
| ALAN LONOCONUS, ED.D., | |
| DR. DAN GOFFREDO, | |
| DR. JANE TRIMBLE, | |
| MARSHALL HOFFRITZ, | |
| BETTY BYRNE, | |
| MICHAEL FLICK, and | |
| MEREDITH BEBEE, | |
| Defendants. | |

DuBois, J.                                                                                       April 6, 2015

## M E M O R A N D U M

### I.    INTRODUCTION

This is a civil rights case in which plaintiff Marykate Gray alleges that, while a minor

student at Great Valley High School, she was subjected to a strip search by defendants in

violation of her rights under the United States and Pennsylvania Constitutions. Specifically,

plaintiff has asserted claims against defendants under 42 U.S.C. § 1983, and under Pennsylvania

law for assault, battery, intentional infliction of emotional distress, negligent infliction of

emotional distress, false imprisonment, and civil conspiracy. Presently before the Court are two

Motions to Dismiss: (1) the Partial Motion to Dismiss filed by defendants Great Valley School

District, Great Valley High School, Alan Lonoconus, Ed.D, Dr. Dan Goffredo, Dr. Marshall

Hoffritz, Betty Byrne, Michael Flick, and Meridith Bebee; and (2) the Motion to Dismiss filed by

defendant Dr. Jane Trimble. For the reasons set forth below, both Motions are granted in part and

denied in part.

## II.   BACKGROUND[1]

### A. Factual Background

In the Complaint, plaintiff Marykate Gray — a sixteen-year old eleventh grade student at Great Valley High School at all relevant times — avers the following facts: Prior to October 10, 2011, the date of the alleged strip search, she had been a victim of assault and subjected to harassment and bullying by unidentified students and staff members at Great Valley High School. (Compl. ¶¶ 15–16.) As a result, she suffered emotional, medical, and school-related problems. (Id. ¶ 17.) Some time thereafter, a meeting was held between defendants Meridith Bebee (a school counselor at Great Valley High School), Michael Flick (an assistant principal at Great Valley High School), and Dr. Jane Trimble (a student services coordinator and/or social worker at Great Valley High School), and plaintiff, and her mother, Regina Gray, in which all parties agreed that Trimble was not to have any contact or interaction with plaintiff without the express consent of plaintiff's parents ("no-contact agreement"). (Id. ¶¶ 9, 18.) Following these events, plaintiff began to improve on both a personal and academic level. (Id. ¶ 20.)

On October 10, 2011, plaintiff felt ill during gym class and went to the girls' locker room in order to use the restroom. (Id. ¶¶ 20–21.) She entered a bathroom stall and broke an Ibuprofen pill in half, intending to swallow the pill using water from the sink. (Id. ¶ 21.) Plaintiff's gym teacher observed plaintiff through a crack in the stall and asked her if she was using drugs. (Id.) Plaintiff responded in the negative, and her gym teacher instructed her to go to her next class. (Id. ¶ 22.)

---

[1]   As required in reviewing a motion to dismiss, the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231, 233 (3d Cir. 2008) (internal quotation marks omitted).

Plaintiff's gym teacher reported her observations to defendant Flick and another educator identified in the Complaint as Mr. Tornetta. (Id. ¶¶ 8, 23.) Subsequently, defendant Marshall Hoffritz, an assistant principal, "forcibly removed" plaintiff from class and brought her to his office where defendant Trimble was "waiting to confront [her]." (Id. ¶ 24.) Hoffritz searched plaintiff's back pack, while Trimble questioned plaintiff. (Id. ¶ 26.) Plaintiff denied possessing drugs, and Hoffritz did not find any contraband in her back pack. (Id. ¶ 27.) Trimble then "physically confronted [p]laintiff, walked around her and placed her hands deep into the pockets of [p]laintiff's tight jeggings and fondled [p]laintiff's buttocks and inner thighs while allegedly searching for contraband." (Id.) Trimble then walked in front of plaintiff and again "forcibly shoved her hands down to the bottom of the pockets and fondled [p]laintiff's abdomen, upper thigh area and the area between her legs . . . ." (Id.) Trimble did not find any contraband. (Id.)

Plaintiff explained to Hoffritz and Trimble that she was feeling ill and had taken an Ibuprofen pill, but they called her a "liar" and proceeded to "physically drag[]" her to the office of defendant Betty Byrne, the school nurse. (Id. ¶ 28.) Once there, Hoffritz left the room but remained in the immediate vicinity where he could see directly into Byrne's office through the two large glass panels on the door. (Id. ¶ 29.) While inside Byrne's office, Trimble ordered plaintiff to remove her bra. (Id.) Plaintiff, who was visibly upset, backed away from Trimble. (Id. ¶ 32.) Trimble followed, and again ordered plaintiff to remove her bra. (Id.) Plaintiff "crossed her arms over her chest," and Trimble responded by grabbing plaintiff's wrists and "forcibly pull[ing] apart" her arms. (Id.) Trimble then began to "forcibly pat down [p]laintiff's upper chest area and torso . . . then moved her hands under [p]laintiff's brassiere and moved her hands back and forth . . . in a circular motion while . . . fondling [p]laintiff's breasts while searching underneath her top and under her bra." (Id.) Byrne subjected plaintiff to an additional physical

3

examination of her ears, eyes, nose, and mouth. (Id. ¶ 34.) Neither Trimble nor Byrne found any contraband on plaintiff. (Id. ¶ 36.)

Plaintiff's parents were not contacted until after the above events occurred. (Id. ¶¶ 25, 30, 35.) Shortly thereafter, plaintiff's mother picked plaintiff up from school and took her to undergo a drug test, the results of which were negative. (Id. ¶ 37.)

### B.  Procedural History

On October 3, 2014, plaintiff filed suit in this Court against defendants Flick; Hoffritz; Byrne; Trimble; Bebee; Alan Lonoconus, Ed.D (the Superintendent of the Great Valley School District); Dr. Dan Goffredo (the Principal of Great Valley High School); Great Valley High School; and Great Valley School District. Plaintiff asserts claims against these defendants under 42 U.S.C. § 1983, and under Pennsylvania law for assault, battery, intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), false imprisonment, and civil conspiracy.

On December 22, 2014, defendants Lonoconus, Goffredo, Hoffritz, Byrne, Flick, Bebee, Great Valley High School, and Great Valley School District filed a Partial Motion to Dismiss ("defendants' Partial Motion to Dismiss") in which they request that the Court dismiss certain claims against them. On the same day, Trimble separately filed a Motion to Dismiss ("Trimble's Motion to Dismiss") in which she argues that plaintiff's claims against her should be dismissed in their entirety.

### III.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion to dismiss. To survive a motion to dismiss, a civil plaintiff must allege facts that "raise

4

a right to relief above the speculative level." <u>Victaulic Co. v. Tieman</u>, 499 F.3d 227, 234 (3d Cir.

2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). A complaint must

contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570). To

satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is

more than "a sheer possibility." <u>Id.</u> "Where a complaint pleads facts that are 'merely consistent

with' a defendant's liability, it 'stops short of the line between possibility and plausibility of

entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557, 127 S. Ct. 1955).

     In <u>Twombly</u>, the Supreme Court used a "two-pronged approach," which it later

formalized in <u>Iqbal</u>. <u>Iqbal</u>, 556 U.S. at 679, 129 S. Ct. 1937; <u>Fowler v. UPMC Shadyside</u>, 578

F.3d 203, 210–11 (3d Cir. 2009). Under this approach, a district court first identifies those

factual allegations that constitute nothing more than "legal conclusions" or "naked assertions."

<u>Twombly</u>, 550 U.S. at 555, 557, 127 S. Ct. 1955. Such allegations are "not entitled to the

assumption of truth" and must be disregarded. <u>Iqbal</u>, 556 U.S. at 679, 129 S. Ct. 1937. The court

then assesses "the 'nub' of the plaintiff['s] complaint — the well-pleaded, nonconclusory factual

allegation[s]"— to determine whether it states a plausible claim for relief. <u>Id.</u>

## IV.   DISCUSSION

### A. PARTIAL MOTION TO DISMISS OF DEFENDANTS LONOCONUS, GOFFREDO, HOFFRITZ, BYRNE, FLICK, BEBEE, GREAT VALLEY HIGH SCHOOL, AND GREAT VALLEY SCHOOL DISTRICT

     The Court first considers defendants' Partial Motion to Dismiss. The Motion is granted in

part and denied in part as set forth below.

5

1.   **Redundancy of Plaintiff's Official Capacity Claims Against the Individual Defendants**

Defendants argue that plaintiff's claims against them in their official capacities should be dismissed because those claims are duplicative of plaintiff's claims against their employer, the Great Valley School District. The Court agrees.

"[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." Hafer v. Melo, 502 U.S. 21, 25 (1991) (internal quotation marks and citations omitted). "Suits against state officials in their official capacity therefore should be treated as suits against the State." Id. For that reason, the U.S. Court of Appeals for the Third Circuit has affirmed the dismissal of official-capacity claims against individual defendants where a plaintiff also sues their municipal employer. See Cuvo v. De Biasi, 169 Fed. App'x 688, 693 (3d Cir.2006) (non-precedential); see also Dawson v. Harran, No. 08-7, 2008 WL 1959696, at *6 (E.D. Pa. May 5, 2008).

Because the official-capacity claims against defendants Lonoconus, Goffredo, Flick, Hoffritz, Byrne, Bebee, and Trimble are redundant of plaintiff's claims against the Great Valley School District, the Court grants defendants' Partial Motion to Dismiss as to this issue and dismisses with prejudice all claims against the individual defendants in their official capacities.

2.   **Plaintiff's Claims Against Great Valley High School**

Defendant Great Valley High School argues that all of plaintiff's claims against it should be dismissed because it is not a legal entity amenable to suit. The Court agrees.

A high school is a proper defendant where "the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity." B.E. v. Mount Hope High Sch., 2012 U.S. Dist. LEXIS 116126, at *30 (S.D. W. Va. Aug. 17, 2012) (citing Muller v. St. Tammany Parish, No. 09-3362, 2010 WL 2464802, at *6 (E.D. La.

Apr. 28, 2010)). However, that is not the case here. As alleged in the Complaint, Great Valley

High School is "a school of the Commonwealth of Pennsylvania, operated by the Great Valley

School District . . . ." (Compl. ¶ 4.); see also 24 Pa. Cons. Stat. Ann. § 3-301 ("The public school

system of the Commonwealth shall be administered by a board of school directors . . . ."). As

such, Great Valley High School is not a legal entity amenable to suit.

       Accordingly, defendants' Partial Motion to Dismiss is granted as to this issue, and all

claims against Great Valley High School are dismissed with prejudice. This dismissal is without

prejudice to plaintiff's right to proceed against defendant Great Valley School District.

### 3.    Plaintiff's State Law Tort Claims Against the Great Valley School District

       Plaintiff has represented to the Court that she no longer wishes to pursue any state law

tort claims against defendant Great Valley School District. (Pl.'s Resp. Opp'n Defs.' Partial Mot.

to Dismiss 22.) The Court thus grants that part of defendants' Partial Motion to Dismiss which

seeks the dismissal of those claims, and dismisses those claims with prejudice.

### 4.    Plaintiff's Request for Punitive Damages in Count VIII of the Complaint

       The Complaint asserts a claim for punitive damages under a separate count, Count VIII.[2]

Defendants seek dismissal of this count because "a claim for punitive damages is not a separate

cause of action" in Pennsylvania. Jeffries v. Ameriquest Mortg. Co., 543 F. Supp. 2d 368, 390

(E.D. Pa. 2008). The Court agrees that plaintiff has improperly plead punitive damages as a

separate cause of action, and thus grants that part of defendants' Partial Motion to Dismiss which

seeks dismissal of Count VIII of the Complaint. This dismissal is without prejudice to plaintiff's

---

[2]    Plaintiff states that she is only seeking punitive damages against the individual defendants. (Pl.'s Resp. Opp'n Defs.' Partial Mot. to Dismiss 16.) Thus, to the extent that the Complaint states a claim for punitive damages against the Great Valley School District, that claim is dismissed with prejudice.

right to file, within twenty (20) days, an amended complaint in which punitive damages are claimed in each count where warranted by the facts and applicable law.[3]

### 5.   Plaintiff's Claims Under the Pennsylvania Constitution

The Complaint also alleges that defendants have deprived plaintiff of her "enhanced rights secured by Article I, Section 8 of the Pennsylvania Constitution." (Compl. ¶ 65.) Defendants argue that any claims based on the Pennsylvania Constitution must be dismissed because there is no private right of action under the Pennsylvania Constitution. Plaintiff responds that defendants' Partial Motion to Dismiss should be denied to the extent that plaintiff is seeking other non-monetary remedies, such as declaratory relief.

Defendants are correct that the Pennsylvania Constitution does not provide a private cause of action for monetary damages. See, e.g., Tirado v. Montgomery Cnty., Pa., No. 12-552, 2013 WL 1285487, at *10 (E.D. Pa. Mar. 29, 2013). That being said, Pennsylvania courts have held that "[o]ther remedies, such as declaratory or prospective injunctive relief, could provide a remedy . . . under the Pennsylvania Constitution." Jones v. City of Philadelphia, 890 A.2d 1188,

---

[3]      In her separately-filed Motion to Dismiss, defendant Trimble argues that plaintiff's request for punitive damages should be dismissed with prejudice because a school district cannot be liable for punitive damages and school district employees are only liable to the same extent as their employing agency. The Court rejects this argument. Although punitive damages cannot be recovered against a school district, punitive damages may be recovered against school district employees under certain circumstances. See 42 Pa. Cons. Stat. Ann. § 8550 (abrogating immunity for acts constituting "a crime, actual fraud, actual malice or willful misconduct"); Purdy v. Romeo, 10 Pa. D. & C.4th 242, 247-48 (Pa. Ct. Com. Pl. 1991), aff'd, 613 A.2d 91 (Pa. Commw. Ct. 1992) ("[O]ur Commonwealth Court has interpreted 42 Pa. C.S. §§ 8553 and 8549 to preclude the recovery of punitive damages against governmental agencies. However, if willful misconduct of the individual defendants is established, the limitation of damages is not applicable.") (citing 42 Pa. Cons. Stat. Ann. § 8550); Danlin Mgmt. Grp., Inc. v. Sch. Dist. of Philadelphia, No. 4527-2005, 2005 WL 2140314, at *3 (Pa. Ct. Com. Pl. Aug. 29, 2005) ("Purdy stands for the proposition that punitive damages may be assessed against the Individual Defendants, [but] not the School District.").

1216 (Pa. Commw. Ct. 2006). Thus, plaintiff may seek other remedies, such as declaratory relief, under the Pennsylvania Constitution.

Accordingly, the Court grants that part of defendants' Partial Motion to Dismiss which seeks dismissal of any claims for monetary damages under Article I, Section 8 of the Pennsylvania Constitution, and denies that part of the Motion which seeks dismissal of all other claims under the Pennsylvania Constitution.

### 6.    Plaintiff's State Law Claims Against Defendants Lonoconus, Goffredo, Hoffritz, Byrne, Flick, and Bebee

In addition to her claims under 42 U.S.C. § 1983, plaintiff asserts claims against defendants under Pennsylvania law for assault, battery, IIED, NIED, false imprisonment, and civil conspiracy. The Court next addresses defendants' Partial Motion to Dismiss as it relates to these claims.

### i.    Plaintiff's Claim of Negligent Infliction of Emotional Distress

Defendants argue that plaintiff's NIED claim should be dismissed because they are entitled to immunity under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. Ann. § 8541. For the reasons set forth below, the Court agrees.

Under the PSTCA, an employee of a local agency is entitled to immunity for actions taken within the scope of his or her employment, unless: (1) the employee's acts fall into one of eight enumerated categories of negligence in 42 Pa. Cons. Stat. Ann. § 8542(b) (relating to: vehicle liability; care, custody or control of personal property; real property; trees, traffic control and street lighting; utility service facilities; streets; sidewalks; and care, custody or control of animals); or (2) the employee's acts constitute "a crime, actual fraud, or willful misconduct" under 42 Pa. Cons. Stat. Ann. § 8550. Spiker v. Whittaker, 553 F. App'x 275, 281 n.6 (3d Cir. 2014). The phrase "willful misconduct" is synonymous with "intentional tort" and requires that a

9

plaintiff establish that the actor "desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue." <u>Coulter v. Graham</u>, No. 2421 C.D. 2010, 2011 WL 10876836, at *3 (Pa. Commw. Ct. June 14, 2011); <u>see also</u> <u>Renk v. City of Pittsburgh</u>, 641 A.2d 289, 293 (Pa. 1994). The Great Valley School District is a "local agency" under the PSTCA. <u>See</u> 42 Pa. Cons. Stat. Ann. § 8501 (defining "[l]ocal agencies" as "a government unit other than the Commonwealth government"). Thus, defendants, as employees of the Great Valley School District, are entitled to immunity as provided in the Act unless one of the exceptions applies.

The alleged actions of defendants Lonoconus, Goffredo, Hoffritz, Byrne, Flick, and Bebee clearly do not fall within any of the eight enumerated categories of negligence in § 8542(b). Moreover, plaintiff has not alleged that defendants engaged in a "crime" or "actual fraud." Finally, she cannot show "willful misconduct" because a NIED claim, by definition, "is predicated on negligence and not intent," which contradicts the requirement of willful misconduct contained in § 8542(b). <u>Vega v. Columbia Borough</u>, No. 08-5932, 2009 WL 2143549, at *5 (E.D. Pa. July 15, 2009) (collecting cases dismissing NIED claims on the ground that defendants were entitled to immunity under the PSTCA). Defendants Lonoconus, Goffredo, Hoffritz, Byrne, Flick, and Bebee are therefore entitled to immunity under the PSTCA.

Accordingly, the Court grants that part of defendant's Partial Motion to Dismiss which seeks to dismiss plaintiff's NIED claim, and that claim is dismissed with prejudice as to defendants Lonoconus, Goffredo, Hoffritz, Byrne, Flick, and Bebee.

ii.   **Plaintiff's State Law Claims of Assault, Battery, Intentional Infliction of Emotional Distress, False Imprisonment, and Civil Conspiracy Against Defendants Lonoconus, Goffredo, Flick, and Bebee**

Defendants Lonoconus, Goffredo, Flick, and Bebee argue that plaintiff's state law claims of assault, battery, IIED, false imprisonment, and civil conspiracy should be dismissed because the Complaint does not plausibly allege that they were personally involved in or caused any of those alleged torts. For the reasons that follow, the Court agrees.

"It is axiomatic that a tort claim requires proof that a defendant's action caused the plaintiff's injury. . . . A plaintiff's failure to allege causation renders an intentional tort claim ineffective." Dull v. W. Manchester Twp. Police Dep't, No. 07-307, 2008 WL 717836, at *11 (M.D. Pa. Mar. 17, 2008); see also K.A. ex rel. J.A. v. Abington Heights Sch. Dist., No. 12-CV-2486, 28 F. Supp. 3d 356, 381–82 (M.D. Pa. June 27, 2014) (dismissing claims where there were no allegations in the Complaint that the defendants "participated in violating the plaintiffs' rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in . . . subordinates' violations").

First, the only factual allegations in the Complaint pertaining to defendant Flick state that: he was aware of the no-contact agreement; he was informed the day of the alleged strip search that plaintiff had ingested drugs; he searched the girls' locker room for drugs after plaintiff had left; and he called plaintiff's mother after the alleged strip search took place. (Compl. ¶¶ 16–18, 23, 25.) Those allegations are insufficient to show that Flick directly or indirectly participated in the strip search of plaintiff. As such, plaintiff has failed to state claims of assault, battery, IIED, false imprisonment, and civil conspiracy against Flick.

Second, with respect to defendant Lonoconus, there are no allegations in the Complaint that he was present the day of the alleged strip search, or that he participated in the search in any

11

way. Plaintiff has therefore failed to state claims of assault, battery, IIED, false imprisonment, and civil conspiracy against Lonoconus.

Third, with respect to defendant Bebee, the only factual allegation in the Complaint concerning her is that she was present at the meeting in which the no-contact agreement was reached. (Id. ¶ 18.) This is insufficient to show that she participated, directly or indirectly, in the alleged strip search. Plaintiff has thus failed to state claims of assault, battery, IIED, false imprisonment, and civil conspiracy against Bebee.

Finally, with respect to defendant Goffredo, the only factual allegations in the Complaint pertaining to him are that he was or should have been aware of the no-contact agreement, and that he contacted plaintiff's mother after the alleged strip search occurred. (Id. ¶¶ 16–17, 35.) As above, these factual allegations are insufficient to state claims of assault, battery, IIED, false imprisonment, and civil conspiracy against Goffredo.

Accordingly, the Court grants that part of defendants' Partial Motion to Dismiss which seeks dismissal of plaintiff's claims of assault, battery, IIED, false imprisonment, and civil conspiracy against defendants Lonoconus, Goffredo, Flick, and Bebee. This dismissal is without prejudice to plaintiff's right to file, within twenty (20) days, an amended complaint with respect to those claims if warranted by the facts and applicable law.

### iii. Plaintiff's Claim of Intentional Infliction of Emotional Distress Against Defendants Hoffritz and Byrne

Defendants argue that plaintiff's IIED claim should be dismissed because plaintiff has failed to allege conduct which rises to the requisite level of "extreme or outrageous" conduct under Pennsylvania law. The Court disagrees.

To state a claim for IIED under Pennsylvania law, a plaintiff must plead that defendants engaged in: "(1) extreme and outrageous conduct, (2) performed intentionally or recklessly,

12

(3) causing emotional distress, (4) which is severe." <u>Serine v. Marshall</u>, No. 14-4868, 2015 WL 803108, at *4 (E.D. Pa. Feb. 25, 2015). The "[C]ourt must make the initial determination of whether a defendant's conduct was so extreme and outrageous that recovery may be justified." <u>Small v. Juniata College</u>, 682 A.2d 350, 355 (Pa. Super. Ct. 1996).

Taken in the light most favorable to plaintiff, the facts alleged in the Complaint demonstrate that defendants Hoffritz and Byrne played a direct role in facilitating Trimble's strip search of plaintiff. With respect to Hoffritz, plaintiff alleges that he "forcibly removed" her from class, brought her to his office where Trimble "was waiting to confront [her]," and then "physically dragged" her to Byrne's office, where he remained outside of the door while Trimble conducted the strip search. (Compl. ¶¶ 24–34.) With respect to Byrne, plaintiff alleges, <u>inter alia</u>, that she was present, allowed Trimble to conduct the strip search, and then subjected plaintiff to an additional physical examination. (<u>Id.</u> ¶ 28–34.) Moreover, plaintiff alleges that Hoffritz and Byrne did this despite knowledge of plaintiff's emotional vulnerabilities and the fact that Trimble's strip search of plaintiff violated the no-contact agreement because her parents had not been notified prior to the search. (<u>Id.</u> ¶¶ 16–17, 24–34.) As a result of defendants' actions, plaintiff avers that she has suffered emotional distress, nightmares, panic attacks, physical injuries, and other symptoms such as difficulty concentrating, vomiting episodes, panic attacks, and fainting spells. (<u>Id.</u> ¶ 51.)

Under such circumstances, the Court concludes that plaintiff has stated a claim of IIED against defendants Hoffritz and Byrne under Pennsylvania law, and thus denies that part of defendants' Partial Motion to Dismiss which seeks dismissal of that claim.

### iv.   Plaintiff's Claim of False Imprisonment Against Defendants Hoffritz and Byrne

Defendants argue that plaintiff's false imprisonment claim must be dismissed because plaintiff cannot show that she was unlawfully detained under Pennsylvania law. Plaintiff responds that she can establish unlawful detention because "the purpose of detaining her was to conduct an illegal strip search." (Pl.'s Resp. Opp'n Defs.' Partial Mot. Dismiss 26.)

To state a claim for false imprisonment under Pennsylvania law, a plaintiff must plausibly allege that: (1) he or she was detained; and (2) the detention was unlawful. Gwynn v. City of Philadelphia, 719 F.3d 295, 304 n.4 (3d Cir. 2013) (citing Renk, 641 A.2d at 293 n.4)). In arguing that plaintiff has failed to state such a claim, defendants rely on cases from courts in other Districts which hold that false imprisonment claims are never cognizable in the public school context because students do not possess freedom of movement within a school. See, e.g., Oliver by Hines v. McClung, 919 F. Supp. 1206, 1219 (N.D. Ind. 1995) (granting motion for summary judgment of defendant school officials in a school strip search case with respect to false imprisonment claim under Indiana law because "accepting the Plaintiffs' theory would mean that every student escorted to the office for investigation of a disciplinary matter would have a claim for false imprisonment if that student was ultimately exonerated from discipline"); Wilson v. Cahokia Sch. Dist. No. 187, No. 05-297, 2005 WL 2407577, at *2 (S.D. Ill. Sept. 29, 2005) (dismissing plaintiff's false imprisonment claim under Illinois law pursuant to Fed. R. Civ. P. 12(b)(6) because "she could . . . never show that she was unlawfully restrained because she never possessed freedom of movement within the school").

Although the Court may ultimately adopt the view set forth in the decisions cited by defendants at the summary judgment stage, based on the allegations in the Complaint, the Court

declines to do so at this time. Accordingly, the Court denies that part of defendants' Partial

Motion to Dismiss as it relates to this issue.

**v.   Plaintiff's Claim of Civil Conspiracy Against Defendants
Hoffritz and Byrne**

Defendants argue that plaintiff has failed to state a claim for civil conspiracy under

Pennsylvania law because she has not plausibly alleged that they reached an unlawful agreement

to violate her rights. For the reasons set forth below, the Court rejects this argument.

To state a claim for civil conspiracy under Pennsylvania law, a plaintiff must allege:

"(1) a combination of two or more persons acting with a common purpose to do an unlawful act

or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in

pursuance of the common purpose; and (3) actual legal damage." Arsenal, Inc. v. Ammons, No.

14-1289, 2014 WL 6771673, at *4 (E.D. Pa. Dec. 2, 2014) (citing Strickland v. Univ. of

Scranton, 700 A.2d 979, 987–88 (Pa. Super. Ct. 1997)).

As set forth in the Complaint, despite their knowledge of plaintiff's vulnerable emotional

state and of the no-contact agreement, defendants Hoffritz and Byrne worked in concert to

facilitate Trimble's strip search of plaintiff. Hoffritz is alleged to have "forcibly removed"

plaintiff from class and brought her to his office where Trimble "was waiting to confront [her]."

(Compl. ¶ 24.) Plaintiff alleges that Hoffritz then "physically dragged" her to Byrne's office,

where he remained outside of the door while Trimble conducted the strip search. (Id. ¶¶ 24–34.)

With respect to Byrne, plaintiff alleges, inter alia, that she was present, allowed Trimble to

conduct the strip search, and then subjected plaintiff to an additional physical examination. (Id.

¶ 28–34.) Granting plaintiff all reasonable inferences from these facts, the Court concludes that

plaintiff has plausibly alleged the existence of an unlawful agreement between defendants

Hoffritz and Byrne.

15

Thus, the Court denies that part of defendants' Partial Motion to Dismiss which seeks dismissal of plaintiff's claim of civil conspiracy under Pennsylvania law.[4]

### B. DR. JANE TRIMBLE'S MOTION TO DISMISS

The Court next considers defendant Trimble's Motion to Dismiss. As set forth below, the Motion is granted in part and denied in part.

### 1. Plaintiff's Federal Claim Against Trimble: Unreasonable Search in Violation of the Fourth Amendment

Trimble argues that plaintiff's claim that she was subjected to an unreasonable search in violation of the Fourth Amendment must be dismissed because the search was reasonable as a matter of law. The Court rejects this argument.

"The Fourth Amendment right of the people to be secure in their persons . . . against unreasonable searches and seizures generally requires a law enforcement officer to have probable cause for conducting a search." Safford Unified Sch. Dist. No. 1 v. Redding, 557 U.S. 364, 370 (2009) (internal quotation marks omitted). In the school setting, however, the Supreme Court has applied "a standard of reasonable suspicion to determine the legality of a school administrator's search of a student." Id. at 370 (citing New Jersey v. T.L.O., 469 U.S. 325 (1985)). "[A] school search 'will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.'" Id. The Supreme Court has further stated that strip searches involve "both subjective and reasonable societal expectations of personal privacy [which] support the treatment of such a search as categorically distinct, requiring distinct elements of

---

[4]     In Count I of the Complaint, plaintiff also alleges a claim of civil conspiracy under 42 U.S.C. § 1983. Defendants similarly argue that this claim must be dismissed because plaintiff has failed to plausibly allege the existence of an unlawful agreement. The Court rejects this argument for the same reasons as above, and thus denies that part of defendants' Partial Motion to Dismiss which seeks dismissal of plaintiff's claim of civil conspiracy under § 1983.

justification on the part of school authorities for going beyond a search of outer clothing and belongings." Id. at 374.

The Court concludes that plaintiff has plausibly alleged a violation of her rights under the Fourth Amendment. As alleged in the Complaint, there was an ongoing special relationship in which Trimble was not to have any contact with plaintiff without the prior approval of her parents. Despite this, and despite having reason to know of plaintiff's emotional vulnerabilities due to past incidents at the school, Trimble "physically confronted [plaintiff], walked around her and placed her hands deep into the pockets of [p]laintiff's tight jeggings and fondled [plaintiff's] buttocks and inner thighs while allegedly searching for contraband." (Compl. ¶ 27.) Even though she did not find any contraband, Trimble continued with the search. She instructed plaintiff to remove her bra, grabbed her wrists, "forcibly pulled apart" her arms, and began to "forcibly pat down [p]laintiff's upper chest area and torso . . . then moved her hands under [p]laintiff's brassiere and moved her hands back and forth . . . in a circular motion while . . . fondling [p]laintiff's breasts while searching underneath her top and under her bra." (Id. ¶¶ 29–32.) Viewing these and all of the other factual allegations in the Complaint in the light most favorable to plaintiff, the Court concludes that the facts, if proven, plausibly state a claim for the violation of plaintiff's rights under the Fourth Amendment.

Accordingly, the Court denies that part of Trimble's Motion to Dismiss which seeks the dismissal of plaintiff's Fourth Amendment claim.

### 2.    Trimble's Assertion of Qualified Immunity

Trimble argues that plaintiff's Fourth Amendment claim must be dismissed because she is entitled to qualified immunity for her actions. For the reasons that follow, the Court disagrees.

The qualified immunity analysis involves two steps: "(1) whether the plaintiff alleged sufficient facts to establish the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the defendant's actions." Estate of Lagano v. Bergen Cnty. Prosecutor's Office, 769 F.3d 850, 858 (3d Cir. 2014) (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson, 555 U.S. at 231, 129 S. Ct. 808 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The Third Circuit has held that "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) (internal quotations and citations omitted); cf. Saucier v. Katz, 533 U.S. 194, 201 (2001) (qualified immunity determined, in part, on basis of "parties' submissions").

The Court has already concluded that plaintiff has alleged sufficient facts to establish a violation of her rights under the Fourth Amendment — namely the right of a student to be free from an unreasonable strip search in violation of the Fourth Amendment. Thus, whether Trimble is entitled to qualified immunity turns on whether that right was "clearly established" at the time of her actions. Estate of Lagano, 769 F.3d at 858. The Court concludes that it was.

The Supreme Court decided Safford on June 25, 2009, more than two years before the alleged strip search occurred in this case. In Safford — a case involving a search of a thirteen-year-old middle school student who was instructed to pull out and shake her bra and underwear — the Court discussed the "subjective and reasonable societal expectations of personal privacy" that a student possesses in the integrity of his or her body, and held that the extension of the search in that case to the student's bra and underwear was unconstitutional because "once the

initial clothed search of the student yielded no results, there was insufficient evidence upon which school officials could reasonably base their intrusive strip search, especially in the absence of any evidence of a general practice among the students at the school of hiding contraband in their underwear." D.H. ex rel. Dawson v. Clayton Cnty. Sch. Dist., No. 12-478, 2014 WL 5088111, at *23–24 (N.D. Ga. Sept. 30, 2014) (discussing Safford). The Safford Court specifically rejected the proposition that, without more, the fact that students may hide contraband in or under their clothing is sufficient to justify a strip search. See Safford,  557 U.S. at 375–76.

The Supreme Court's decision in Safford was sufficient to put a reasonable school official such as Trimble on notice that strip searching plaintiff — despite knowledge of her emotional vulnerabilities, despite knowledge of the no-contact agreement, without the prior approval of her parents, and without any "distinct elements of justification" to believe that she was hiding contraband underneath her clothing — violated plaintiff's clearly established right to be free from an unreasonable strip search in violation of the Fourth Amendment. Id. at 374; Blake v. Wright, 179 F.3d 1003, 1007 (6th Cir. 1999) (noting that "[a] right is clearly established if there is binding precedent from the Supreme Court [of the United States]").

Thus, the Court concludes that Trimble is not entitled to qualified immunity for her actions, and denies that part of Trimble's Motion to Dismiss which seeks dismissal of plaintiff's Fourth Amendment claim on that ground.

### 3.    Plaintiff's State Law Claims Against Trimble

Trimble requests that the Court dismiss plaintiff's state law claims of assault, battery, IIED, NIED, false imprisonment, and civil conspiracy.

19

With respect to plaintiff's NIED claim, as discussed above, Trimble is entitled to immunity under the PSTCA. See 42 Pa. Cons. Stat. Ann. §§ 8541, 8542, 8550; Vega, 2009 WL 2143549, at *5. The Court therefore grants that part of Trimble's Motion to Dismiss which seeks dismissal of plaintiff's NIED claim, and that claim is dismissed with prejudice.

With respect to plaintiff's remaining state law claims against Trimble — assault, battery, IIED, false imprisonment, and civil conspiracy — the Court concludes, for the reasons set forth above, that plaintiff has plausibly plead facts sufficient to support those claims. Accordingly, the Court denies that part of Trimble's Motion to Dismiss which seeks dismissal of those claims.

## V.   CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part defendants' Partial Motion to Dismiss, and grants in part and denies in part defendant Trimble's Motion to Dismiss.